IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SYANI GONZALEZ,

Plaintiff,

v.

TARGET CORPORATION, et al.,

Defendants.

CIVIL ACTION
NO. 25-6923

**OPINION**

**Slomsky, J.**                                                                 **May 6, 2026**

## I.      INTRODUCTION

Plaintiff Syani Gonzalez brings claims pursuant to 42 U.S.C. § 1983 and Pennsylvania

state law stemming from her alleged unlawful arrest by Defendants Detective Frank Hayden

("Hayden") and Officer Michael Owen ("Owenz') (together with Hayden, the "Officer

Defendants"), and her subsequent prosecution.  Plaintiff has also sued Defendant Target

Corporation.

The Officer Defendants and Target have each filed a Motion to Dismiss the Amended

Complaint pursuant to the Federal Rules of Civil Procedure 12(b)(6).  For the following reasons,

both Motions to Dismiss will be granted.

## II.     BACKGROUND

### A.  Factual Background

Plaintiff's three-count Amended Complaint asserts claims of false arrest and malicious

prosecution pursuant to 42 U.S.C. § 1983 as well as a claim of malicious prosecution under

Pennsylvania state law.

The following facts are taken from the Amended Complaint and viewed in the light most favorable to Plaintiff:

In January 2023, Target reported suspected thefts of PlayStation 5 ("PS5") consoles from its Bensalem, Pennsylvania store. (Doc. No. 17 ¶15.) Surveillance footage from January 2, 23, and 30, 2023 allegedly depicted two women leaving the store with merchandise. (Id. ¶16.) Plaintiff's older brother had recently been terminated from Target for suspected theft. (Id. ¶18.) Detective Hayden and Officer Owen investigated the alleged thefts. (Id. ¶19.)

On or about February 16, 2023, Hayden obtained a "less recent" school photograph of Plaintiff. (Id. ¶¶20, 21.) On or about February 23, 2023, Hayden met with Target's Assets Protection personnel at the Bensalem store to review surveillance footage, and Target personnel affirmatively represented that the female depicted in the footage matched Plaintiff. (Id. ¶¶22–24.) Plaintiff alleges that no formal identification, lineup, or reliable comparative procedure was conducted by the police, and that "[m]aterial discrepancies existed between Plaintiff and the individual depicted in the footage." (Id. ¶¶25–27.) The identification supplied by Target personnel was described in an Affidavit of Probable Cause in support of the issuance of an arrest warrant for Plaintiff. (Id. ¶29.) Detective Hayden and Officer Owen prepared, signed, and verified the Affidavit of Probable Cause. (Id. ¶30.)

The Affidavit of Probable Cause signed by Hayden and Owen states that Target's loss prevention employee, Amanda Parks ("Parks"), supplied written statements and photo surveillance to Owen.[1] (See Doc. No. 19-4 at 4.) The Affidavit of Probable Cause states, in its entirety, the following:

---

[1] Because the Affidavit of Probable Cause is referenced in and relied on in the Amended Complaint, the Court may consider it when ruling on the Motions to Dismiss. See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) ("A document integral

Your Honor,

Your affiants are Detective F. Sean Hayden #22213 and Officer Michael Owen of the Bensalem Township Police Department. On 2/27/23, Of[ficer] Owen requested my assistance with this theft investigation that occurred at Target.

Of[ficer] Owen provided me with loss prevention employee, Amanda Parks' written statements, and photo surveillance. I reviewed [the] loss preventions report which states that she began this investigation into two employees, Samuel Gonzalez and Jayden Birchmore, after conducting live surveillance and observing discrepancies during transactions between Gonzalez and Birchmore. As a result, Parks discovered additional thefts involving the employees and non-employees as described below.

On January 2, 2023, Samuel Gonzales was observed selecting a PlayStation5 (PS5) from the back room at approximately 1414 h[ours] and took it to the sales floor. The PS5 was valued at $559.99. At 1420 h[ours], Gonzalez began a transaction with a young Hispanic female. The female was later identified as Gonzalez's juvenile sister, Syani Gonzalez. Samuel Gonzalez scanned a Nintendo Switch Lite barcode instead of the PS5. The Nintendo was valued at $199.99. Syani paid for the value of the Nintendo and then took possession of the PS5. She proceeded past all points of sale without paying for retail price, which created a loss of $360.

On January 23, 2023, Gonzalez was observed selected a PS5 ($559.99) from the stockroom and bringing it to the register. The same female from 1/2/23 was the buyer identified as, Syani Gonzalez. Samuel Gonzalez scanned a DPCI for a Nintendo with a value of $199.99. Syani paid the $199.99 and grabbed the PS5 passing all points of sale without paying full retail value, which created a loss of $360.

On January 30, 2023, at approx[imately] 1350 h[ours], Samuel Gonzalez was observed selecting a PS5 ($499.99 value) from the backroom and bringing to the sales floor. The buyer was Syani Gonzalez. Samuel Gonzalez scanned the same HeyDay item ($9.99) as he did at 1330 h[ours] instead of the PS5. Syani paid for the HeyDay item and grabbed the PS5 passing all points of sale without paying full retail value, which created a loss of $490.

TOTAL LOSS - $1,210.

---

to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.") (internal quotations and citations omitted).

3

Based on the above facts, I respectfully request a summons be issued for the defendant's arrest.

(Doc. No. 19-4.)

On March 1, 2023, Plaintiff was arrested and charged in juvenile court with delinquent acts alleging retail theft and criminal conspiracy. (Doc. No. 17 ¶32.) On July 11, 2023, she was acquitted of all charges. (Id. ¶33.)

## B. Procedural Background

On March 5, 2026, Plaintiff filed the Amended Complaint. (Doc. No. 17.) On March 10, 2026, the Officer Defendants filed a Motion to Dismiss. (Doc. No. 19.) On March 19, 2026, Target filed its Motion to Dismiss. (Doc. No. 21.) On March 24 and 27, 2026, Plaintiff filed her Responses in Opposition to the Motions to Dismiss. (Doc. Nos. 22, 23.) On March 31, 2026, the Officer Defendants filed their Reply and on April 2, 2026, Target filed its Reply. (Doc. Nos. 24, 25.) The Motions to Dismiss are now ripe for disposition.

## III. STANDARD OF REVIEW

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009). After Iqbal it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. Id. at 678; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Tatis v. Allied Interstate, LLC, 882 F.3d 422, 426 (3d Cir. 2018) (quoting Iqbal, 556 U.S. at 678). Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Iqbal, 556 U.S. at 678). Instead, "[a] claim has facial plausibility when the plaintiff pleads

4

factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." Id. (quoting Iqbal, 556 U.S. at 678).

Applying the principles of Iqbal and Twombly, the Third Circuit Court of Appeals in

Santiago v. Warminster Township, set forth a three-part analysis that a district court in this Circuit

must conduct in evaluating whether allegations in a complaint survive a Rule 12(b)(6) motion to

dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a
> claim." Second, the court should identify allegations that, "because they are no
> more than conclusions, are not entitled to the assumption of truth." Finally, "where
> there are well-pleaded factual allegations, a court should assume their veracity and
> then determine whether they plausibly give rise to an entitlement for relief."

629 F.3d 121, 130 (3d Cir. 2010) (alteration in original) (quoting Iqbal, 556 U.S. at 675, 679). The

inquiry is normally broken into three parts: "(1) identifying the elements of the claim, (2)

reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded

components of the complaint and evaluating whether all of the elements identified in part one of

the inquiry are sufficiently alleged." Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show"

such an entitlement with its facts. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir.

2009) (citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)). "[W]here the

well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct,

the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal,

556 U.S. at 679 (second alteration in original) (citation omitted). The "plausibility" determination

is a "context-specific task that requires the reviewing court to draw on its judicial experience and

common sense." Id.

IV.    ANALYSIS

A.  The Officer Defendants' Motion to Dismiss Will Be Granted

1.  § 1983 Claims (Counts I and II)

The Officer Defendants seek dismissal of Plaintiff's § 1983 claims for false arrest and malicious prosecution for three reasons: (1) the Officer Defendants had probable cause to arrest Plaintiff based on the victim's affirmative representation that the female in the video surveillance matched Plaintiff; (2) the Affidavit of Probable Cause did not contain material omissions; and (3) the Officer Defendants are entitled to qualified immunity.  (See Doc. No. 19-3.)  In her Opposition, Plaintiff argues that the Amended Complaint plausibly alleged that the Officer Defendants omitted material information from the Affidavit of Probable Cause, which undermined any finding of probable cause.  (See Doc. No. 22 at 6–10.)  The Court will address each of Defendant's arguments, in turn, below.

i.  Probable Cause

First, the Officer Defendants argue that there was sufficient probable cause to obtain a warrant for Plaintiff's arrest.  Both claims for false arrest and malicious prosecution under § 1983 hinge on the existence of probable cause.  Andrews v. Scuilli, 853 F.3d 690, 697 (3d Cir. 2017).  To plausibly allege a claim for false arrest, a plaintiff must allege: (1) that there was an arrest; and (2) that the arrest was made without probable cause.  James v. City of Wilkes-Barre, 700 F.3d 675, 680 (3d Cir. 2012).  To bring a successful claim for malicious prosecution under § 1983, a plaintiff must allege that: "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure

6

as a consequence of a legal proceeding." Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003).

"Probable cause exists whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested." United States v. Myers, 308 F.3d 251, 255 (3d Cir. 2002). Evaluating whether probable cause existed for the issuance of a warrant requires a "totality of the circumstances" analysis including "the objective facts available to the officers at the time of the arrest." United States v. Glasser, 750 F.2d 1197, 1205–06 (3d Cir. 1984). "Evidence that may prove insufficient to establish guilt at trial may still be sufficient to find the arrest occurred within the bounds of the law." Barna v. City of Perth Amboy, 42 F.3d 809, 819 (3d Cir. 1994). "The ultimate finding of guilt or innocence, or even dismissal of charges arising out of an arrest and detention has no bearing on whether the arrest was valid." Pansy v. Preate, 870 F.Supp. 612, 617–18 (M.D. Pa. 1994), aff'd, 61 F.3d 896 (3d Cir. 1995).

The question of whether probable cause existed for an arrest is generally a question of fact for the jury. See Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 788 (3d Cir. 2000). However, dismissal is appropriate where the facts alleged by Plaintiff, taken as true and drawing all inferences in favor of Plaintiff, would still support a finding of probable cause. See Olson v. Ako, 724 Fed. App'x. 160, 164 (3d Cir. 2018).

When an officer arrests a person pursuant to a valid warrant, such as the case here, the focus of a probable cause analysis is "whether the affidavit provide[d] a sufficient basis for the decision the magistrate judge actually made." United States v. Jones, 994 F.2d 1051, 1058 (3d Cir. 1993). Reviewing courts "give great deference to the magistrate judge's probable cause

determination." United States v. Hodge, 246 F.3d 301, 305 (3d Cir. 2001).  Review is confined to the facts presented to the magistrate in the affidavit to evaluate if there was sufficient information to support a finding of probable cause.  Jones, 246 F.2d at 1055.

Here, the Officer Defendants argue that probable cause existed for a simple reason— Target personnel affirmatively identified the female depicted in the video surveillance as Plaintiff, and such identification was relied upon in the Affidavit of Probable Cause.  (Doc. No. 19-3 at 4) (citing Doc. No. 17 ¶23, 29.)  The Court agrees.  "The identification of an individual as a perpetrator of a crime by a comparison of photographs may establish probable cause for an arrest."  Craig v. Collins, No. 13-cv-1873, 2023 U.S. Dist. LEXIS 133248, at *21–22 (citing United States v. Scheets, 188 F.3d 829, 837–38 (7th Cir. 1999) (finding probable cause to arrest where police officers compared a photograph of the perpetrator at the crime scene produced by a surveillance camera with a photograph of the arrestee and the arrestee himself)).  Besides, Plaintiff has not alleged facts that would plausibly support her legal conclusions that probable case was lacking for her arrest.  Santiago v. Hulmes, No. 14-cv-7109, 2015 U.S. Dist. LEXIS 40029, at *4 (E.D. Pa. Mar. 30, 2015) (dismissing false arrest, false imprisonment, and malicious prosecution claims when plaintiffs failed to "affirmatively assert facts to show that the Officer Defendants did not have probable cause" when plaintiffs simply alleged that all allegations against them in the underlying criminal proceeding were false).  Here, Plaintiff's allegations in the Amended Complaint are vague and conclusory, and merely recite the elements of a malicious prosecution and false arrest claim, making them insufficient to state a plausible claim for relief. See Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

### ii. Material Omissions

Second, the Officer Defendants argue that the Affidavit of Probable Cause did not contain any false statements made by the Officer Defendants or omissions that created a falsehood in the arrest warrant.  (Doc. No. 19-3 at 5.)  An arrest warrant will issue only if a neutral and detached magistrate agrees with the police officer that probable cause to arrest exists.  Wilson v. Russo, 212 F.3d 781, 787 (3d Cir. 2000) ("[A]n uninterested party is presumably better suited to review and evaluate facts than an officer pursuing a lead.").

In this case, Plaintiff avers that the Officer Defendants lacked probable cause to arrest her because "[t]he Affidavit omitted material discrepancies and failed to disclose the absence of reliable identification methodology." [2]  (Doc. No. 17 at ¶31.)

The Third Circuit Court of Appeals has set forth a test to determine when a false statement or material omission in an arrest warrant affidavit gives rise to a Fourth Amendment violation.  Wilson, 212 F.3d at 787 (relying on Franks v. Delaware, 438 U.S. 154, 155–56

---

[2]  In Plaintiff's Response in Opposition, she claims that the Officer Defendant's omitted three categories of material information from the affidavit of probable cause that was submitted to the magistrate judge.  (See Doc. No. 22 at 5–6.)  Specifically, Plaintiff asserts that: (1) no witness observed Plaintiff and the purported identification was made weeks later based solely on a review of video surveillance; (2) there are material discrepancies between Plaintiff's appearance and the individuals depicted in the surveillance footage; and (3) the identification itself was the product of a police-driven process.  (Id.)

However, the Court need not credit arguments made for the first time in a party's Response in Opposition, and will only consider the allegations within Plaintiff's Amended Complaint. See Harris v. United States Dep't of State, No. 25-cv-2157, 2026 WL 686952, at *n.1 (E.D. Pa. Mar. 11, 2026) ("The Court recognizes that [Plaintiff] has provided far more detail describing his factual allegations in his responses to Defendants' motion to dismiss than he provided in his Complaint. However, parties may not assert new facts or assert more claims in response to a motion to dismiss.") (citing cases Gueson v. Feldman, No. 00-cv-1117, 2002 WL 32308678, at *4 (E.D. Pa. Aug. 22, 2002) ("A plaintiff may not raise new claims in response to a motion to dismiss") and Hammond v. City of Philadelphia, No. 00-cv-5082, 2001 WL 823637, at *2 (E.D. Pa. June 29, 2001) ("A party may not rely on new facts in submissions in response to a motion to dismiss to defeat the motion.")).

(1978)).  To demonstrate that an arrest warrant lacked probable cause, a plaintiff must show: (1) the police officer knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) such statements or omissions are material, or necessary, to the finding of probable cause.  Wilson, 212 F.3d 781, 786–87 (quotation marks omitted).  In practice, courts in the Third Circuit have performed a three-step analysis to assess these factors:

> We follow the three-step procedure we described in Wilson…First, we assess the evidence the plaintiff asserts was recklessly omitted from the affidavit. Next, we reconstruct an affidavit that includes any recklessly omitted information. And finally, we assess the materiality of the omitted information to the probable cause determination.

Dempsey v. Bucknell Univ., 84 F.3d 457, 470 (3d Cir. 2016). The Court will address, in turn, each of the three steps identified in Dempsey to the claims made by Plaintiff of material omission.

As to the first step, omissions in an affidavit are made with a reckless disregard for the truth when an "officer withholds a fact in his ken that any reasonable person would have known that this was the kind of thing a judge would wish to know."  Wilson, 212 F.3d 787–88 (citation omitted).  Here, as noted above, Plaintiff merely states in the Amended Complaint that "[t]he Affidavit omitted material discrepancies and failed to disclose the absence of reliable identification methodology."  (Doc. No. 17 at ¶31.)  As pled, and viewed in the light most favorable to Plaintiff, Plaintiff fails to show that the Officer Defendants made omissions that created a falsehood in applying for a warrant because these allegations are conclusory and without factual support.  See Regusters v. City of Philadelphia, No. 25-cv-865, 2026 U.S. Dist. LEXIS 29351, at *8 (finding that plaintiff's allegations that defendants engaged in improper coercive tactics are conclusory and fail to identify "any particular tactics.").

10

Turning to the last two steps, even if the Court were to reconstruct the affidavit to include these omissions, these omissions are immaterial to a finding of a probable cause.  Probable cause "requires more than mere suspicion; however, it does not require that the [defendant] have evidence sufficient to prove guilt beyond a reasonable doubt."  Orsatti v. N.J. State Police, 71 F.3d 480, 482–83 (3d Cir. 1995).  Despite Plaintiff's contention that no independent eyewitness identified Plaintiff and no lineup was employed, these omissions do not negate the probable cause the Officer Defendants had to arrest Plaintiff.  See Royal v. Macy's Corp., No. 21-cv-4439, 2022 U.S. Dist. LEXIS 159940, at *10 (E.D. Pa. Sep. 6, 2022) ("The fact that no individual physically saw [Plaintiff] steal the knives on February 21, 2019 did not negate the probable cause [the Officer] needed to execute [Plaintiff's] arrest given the information available to him.").  The facts in a reconstructed probable cause affidavit would still establish that Plaintiff was related to a recently terminated Target employee for suspected theft, and Target personnel positively identified the female in the video surveillance participating in the illicit purchases as Plaintiff.  This evidence is "sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested."  United States v. Myers, 308 F.3d 251, 255 (3d Cir. 2002).  Moreover, no information was recklessly omitted by the Officer Defendants.  Accordingly, because Plaintiff has not plausibly alleged her arrest was made without probable cause, the Officer Defendants' Motion to Dismiss the Amended Complaint will be granted.

### iii. Qualified Immunity

Third, the Officer Defendants are entitled to qualified immunity.  To determine whether an officer is entitled to a qualified immunity defense, a court must conduct a two-step inquiry: (1) whether the facts "make out a violation of a constitutional right;" and (2) whether the right was "clearly established" at the time of the alleged misconduct.  Pearson v. Callahan, 555 U.S. 223, 232 (2009).  These questions can be addressed in either order.  Id. at 236.  The Court must

11

view the facts "in the light most favorable to the party asserting the injury." Scott v. Harris, 550 U.S. 372, 377 (2007).  The burden of establishing entitlement to qualified immunity lies with the officer claiming its protection.  Reedy v. Evanson, 615 F.3d 197, 223 (3d Cir. 2010).

"Whether a police officer who applied for an arrest warrant is protected by qualified immunity from liability under § 1983 depends upon whether 'the warrant application is so lacking in indicia of probable cause as to render [the] office[ers'] belief in its existence unreasonable[.]'"  Collins, 2023 U.S. Dist. LEXIS 133248, at *28–29 (citing Malley v. Briggs, 475 U.S. 335, at 344–45 (1986)) (further citations omitted).  State actors, including law enforcement officers, may avoid liability under § 1983, and are cloaked with qualified immunity where no constitutional violation occurred.  Wright v. City of Philadelphia, 409 F.3d 595, 599 (3d Cir. 2005).  That is the case here.  Officer Defendants had probable cause to arrest Plaintiff, and did not falsely arrest or maliciously prosecute her.  Gould v. O'Neal, No. 22-1366, 2022 U.S. App. LEXIS 34794, at *3 (3d Cir. Dec. 16, 2022) (citations omitted).  Because Officer Defendants had probable cause to arrest her, as explained supra, no constitutional violation occurred.  As such, Officer Defendants are entitled to qualified immunity.

### 2.  Pennsylvania State Law Claim (Count III)

The Officer Defendants seek dismissal of Plaintiff's malicious prosecution claim under Pennsylvania state law.  In order to state a claim for malicious prosecution under Pennsylvania law, the plaintiff must show that the defendant: (1) initiated or instituted the criminal proceedings; (2) without probable cause; (3) with actual malice; and (4) that the proceedings terminated in the plaintiff's favor.  Griffiths v. Cigna Corp, 988 F.2d 457, 463 (3d Cir. 1993).

Again, because the Officer Defendants had probable cause to arrest Plaintiff, she cannot maintain a malicious prosecution claim against them.  Therefore, this claim will be dismissed.

12

**B. Defendant Target's Motion to Dismiss Will Be Granted**

Target Corporation has also moved to dismiss the malicious prosecution count for failure to state a claim.  In order to state a claim for malicious prosecution under Pennsylvania law, the plaintiff must show that the defendant: (1) initiated or instituted the criminal proceedings; (2) without probable cause; (3) with actual malice; and (4) that the proceedings terminated in the plaintiff's favor.  Griffiths, 988 F.2d at 463.  A court's initial inquiry should be "whether the defendant either directly instituted the proceedings against the plaintiff or can be charged with the responsibility for the institution of the proceedings."  Id. at 464.  Pennsylvania courts rely on Section 653, comment g, of the Restatement (Second) of Torts in assessing whether a private individual can be responsible for initiating a criminal proceeding by providing statements to the police or law enforcement authorities:

> A private person who gives to a public official information of another's supposed criminal misconduct, of which the official is ignorant, obviously causes the institution of such subsequent proceedings as the official may begin on his own initiative, but giving the information or even making an accusation of criminal misconduct does not constitute a procurement of the proceedings initiated by the officer if it is left entirely to his discretion to initiate the proceedings or not. When a private person gives to a prosecuting officer information that he believes to be true, and the officer in the exercise of his uncontrolled discretion initiates criminal proceedings based upon that information, the informer is not liable…even though the information proves to be false and his belief was one that a reasonable man would not entertain. The exercise of the officer's discretion makes the initiation of the prosecution his own and protects from liability the person whose information or accusation has led the officer to initiate the proceedings.
>
> If, however, the information is known by the giver to be false, an intelligent exercise of the officer's discretion becomes impossible, and a prosecution based upon it is procured by the person giving the false information. In order to charge a private person with responsibility for the initiation of proceedings by a public official, it must therefore appear that his desire to have the proceedings initiated, expressed by direction, request or pressure of any kind, was the determining factor in the official's decision to commence the prosecution, or that the information furnished by him upon which the official acted was known to be false.

13

> Thus, comment g distinguishes between situations in which a private individual merely provides information to an official who exercising discretion, may initiate charges, and those in which a private individual either provides knowingly false statements to an official or directs or pressures an official to initiate charges, thereby making the officer's intelligent use of discretion impossible.

Giddens v. Stewart, No. 20-cv-01474, 2021 U.S. Dist. LEXIS 13706, at *18–20 (citing Bradley v. General Acc. Ins. Co., 778 A.2d 707, 710–11 (Pa. Super. Ct. 2001) (citations omitted) (internal quotations omitted).

Here, apart from merely reciting the elements of a malicious prosecution claim, as noted above, Plaintiff's Amended Complaint contains no factual support for her allegation that Defendant Target acted with malice or for the purpose of initiating a criminal proceeding against her by the use of false information. (See Doc. No. 17 at ¶¶49–52.); see also Twombly, 550 U.S. at 555 ("a formulaic recitation of the elements of a cause of action will not do.") Even viewing the facts in the Amended Complaint in the light most favorable to Plaintiff, Defendant Target's "personnel reviewed surveillance footage with [Defendant] Hayden" and "affirmatively represented that the female in the footage matched Plaintiff." (Id. at ¶¶23–24.) What's more, Plaintiff does not allege that the Target employee knowingly gave false statements to an official or directed or pressured an official to initiate charges. Thus, the Court will dismiss the state malicious prosecution claim against Defendant Target.

## V.     CONCLUSION

For the foregoing reasons, the Motions to Dismiss (Doc. Nos. 19, 21) will be granted. An appropriate Order follows.

14